UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH MCQUEEN,

           Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

           Defendant.

Case No. 3:17-cv-05632-BAT

**ORDER AFFIRMING AND DISMISSING WITH PREJUDICE**

Deborah McQueen appeals the decision of the Administrative Law Judge (ALJ) finding her not disabled. She contends the ALJ erroneously 1) rejected portions of the opinion of Bryan G. Marchant, M.D.; and 2) did not provide legally sufficient reasons for finding that her subjective allegations were inconsistent with the record. Dkt. 12 at 1. As discussed below, the ALJ did not err and her decision is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Ms. McQueen filed her third application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 403-33, on October 26, 2012. Tr. 1040. Ms. McQueen alleges disability due to cervical sprain, bilateral rotator cuff tears, chronic pain, depression, and diabetes. Tr. 18, 349. Ms. McQueen claims she has been

ORDER AFFIRMING AND DISMISSING WITH
PREJUDICE - 1

disabled since August 6, 2010. However, the earliest date that could be considered is October 4, 2011, the day after the last determination became administratively final on October 3, 2011. Tr. 363, 1040. Her disability insurance expired on September 30, 2013, the date last insured (DLI). Tr. 1040, 1043. Thus, Ms. McQueen had to show that she was unable to work between October 4, 2011 and September 30, 2013. 20 C.F.R. § 404.1509.

The Court previously remanded this case for further proceedings in July 2016, under case number 3:15-cv-05893-JRC. In that case, the ALJ was directed to discuss the examining physician opinion of Dr. Marchant; reassess the evidence and opinion of treating physician Dr. Naiman; reevaluate the RFC; reassess Ms. McQueen's subjective allegations; and, hold a remand hearing. Tr. 1121-33. The ALJ held a new hearing on November 28, 2016 (Tr. 1060-87) and issued a decision on June 5, 2017, finding Ms. McQueen was not disabled from October 4, 2011 through September 30, 2013. Tr. 1040-53.

Utilizing the five-step disability evaluation process,[1] the ALJ previously found at steps one through three that Ms. McQueen last worked on September 30, 2013 and that Ms. McQueen had the following severe impairments: degenerative disc disease; degenerative joint disease; status post rotator cuff repair, left side; diabetes mellitus; hypertension; obesity; and depression. The ALJ also found that these impairments did not meet the Listings.[2] Tr. 20-23. These findings were not disturbed on appeal and were not revisited on remand.

At step five on remand, the ALJ found that through the DLI, Ms. McQueen had the RFC to perform light work as defined in 20 CFR 404.1567(b) including the ability to do the following. She can never push or pull overhead. She can occasionally climb, stoop, kneel, crouch and

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING AND DISMISSING WITH
PREJUDICE - 2

crawl. She can occasionally reach overhead. She can perform work in which concentrated exposure to extreme cold, heat, vibration, fumes, odors, dusts, gases, poor ventilation and/or hazards is not present. In order to meet ordinary and reasonable employer expectations regarding attendance, work place behavior and production, she can understand, remember and carry out unskilled, routine, and repetitive work that can be learned by demonstration, and in which the tasks to be performed are predetermined by the employer. She can cope with occasional work setting change and occasional interaction with supervisors. She can work in proximity to coworkers, but not in a team or cooperative effort. She can perform work that does not require interaction with the general public as an essential element of the job, but occasional, incidental contact with the general public is not precluded. Tr. 1045.

With this RFC, the ALJ found at step four that Ms. McQueen was unable to perform past relevant work as a home attendant. Tr. 26 (this finding was not disturbed on appeal). At step five, the ALJ called a vocational expert (VE), who testified that Ms. McQueen could work as a housekeeper, a small products assembler, or a price marker. Tr. 1053.

## DISCUSSION

### A. The ALJ's Assessment of Dr. Marchant's Opinion

On March 6, 2010, independent medical examiner and orthopedic surgeon Bryant Marchant, M.D., observed that Ms. McQueen had decreased range of motion in the cervical spine, diffuse tenderness to palpation in myofascial regions from the cervical spine to her trapezius along her rhomboids and into her shoulder bilaterally, decreased bilateral forward flexion and rotation, 4+/5 internal rotation strength in the left shoulder, significant diffuse tenderness to palpation over joint of the shoulders bilaterally, and pain with ranges of motion. Tr. 709-10. Dr. Marchant also found Ms. McQueen could lift and carry up to five pounds

frequently, up to 10 pounds occasionally, and seldom lift and carry up to 25 pounds; sit four hours total; stand two hours total; walk two hours total; occasionally bend and squat; seldom kneel, crawl, climb; and never reach above shoulder level. Tr. 743.

With regard to the ALJ's assessment of Dr. Marchant's opinion, this Court previously held:

> The ALJ's residual functional capacity ("RFC") conflicts with the opinion from Dr. Marchant in a number of ways, including the ALJ's finding that plaintiff could stand and walk for about six hours and sit for about six hours, and also that she occasionally could reach overhead with both upper extremities (see AR. 23). As noted, Dr. Marchant opined that plaintiff never could reach above shoulder level (AR. 743). Tr. 1131.

After the remand hearing, the ALJ specifically addressed Dr. Marchant's opinion. The ALJ's treatment of that opinion, in its entirety, is as follows:

> Significant weight is assigned to the portion of the independent medical examiner (IME) opinion from Dr. Marchant dated March 2010 that the claimant cannot have exposure to workplace hazards such as unprotected heights, as this is consistent with the evidence. (8F/18). While Dr. Marchant opines that the claimant is able to use her hands for repetitive tasks such as pushing/pulling, I find that she can never push/pull overhead. As discussed at length in this Finding, Dr. Naiman has treated the claimant for years, and particularly for impairment(s) with the bilateral upper extremities. As Dr. Naiman's records show gradual improvement in her impairments from 2010 through 2013 however, I find that claimant can occasionally reach overhead. As stated, in July 2013, Dr. Naiman commented that aside from being obese, the claimant, "appears generally healthy." (17F/2). Little weight is given to the portion of Dr. Marchant's opinion that the claimant can sit for a total of 4 hours, as well as stand/walk for 2 hours in an 8 hour day, for in May 2013, the claimant had normal strength in the bilateral lower extremities. (15F/6). She was also able to heel and toe walk. Additionally, Dr. Naiman advised the claimant to start riding an exercise bicycle every other day for 15 minutes at a time. (10F/11). I further find that the claimant should avoid concentrated exposure to respiratory irritants, which Dr. Marchant did not recommend. Common-sense suggests that with several severe physical impairments the claimant will have an easier time working in an environment without respiratory irritants, in that it will place less stress on her system overall.

Tr. 1050. Ms. McQueen argues the ALJ committed harmful legal error by failing to "adhere to the law of the case when again rejecting a portion of Dr. Marchant's opinion without

explanation." Dkt. 12 at 9. She argues the ALJ failed to provide a valid explanation for rejecting Dr. Marchant's finding that Ms. McQueen could sit for only four hours, stand for only two hours, and walk for only two hours; and that she could "lift and carry up to five pounds frequently, up to 10 pounds occasionally, and seldom lift and carry up to 25 pounds." *Id*. (citing Tr. 743).

At the outset, the Court notes the law of the case doctrine, which provides that a decision of a higher court on a legal issue must be followed in all subsequent proceedings in the same case, does not apply here. This case was remanded for further proceedings for the ALJ to consider and discuss evidence, which the ALJ had not previously discussed and on which the Court had not previously ruled. Additionally, the Court notes the ALJ posed more than a "single reason" to reject portions of Dr. Marchant's opinion.

To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id*. Here, the ALJ gave specific and legitimate reasons for rejecting portions of Dr. Marchant's opinion.

The ALJ properly noted that Theodore S. Naiman II, M.D., who had been treating Ms. McQueen for years, reported "gradual improvement in [Ms. McQueen's] impairments from 2010 through 2013." In July 2013, Dr. Naiman stated that, aside from being obese, Ms. McQueen "appears generally healthy." Tr. 1050. The ALJ also noted that in May 2012, Dr. Naiman was of the opinion that Ms. McQueen was not in any acute distress and had recommended that she start riding an exercise bicycle every other day for 15 minutes at a time. Tr. 1050, 773. The ALJ

concluded that "[c]ommon sense suggests that if the claimant were in fact disabled, [Dr. Naiman] would not have recommended that she become more active and exercise." Tr. 1049 (citing Tr. 773).

Also, in May 2013, Dr. Naiman examined Ms. McQueen's lower extremities. At that time, Ms. McQueen sought treatment after she fell in her yard while picking up rocks. Although she claimed that she was suffering a 10/10 pain level in her lower back and weakness in her legs, Dr. Naiman's examination revealed that she had normal strength in her legs, was able to heel and toe walk, had intact sensation in both extremities, and that she had suffered no infractions. Tr. 1050 (citing Tr. 932-933, 940).

It was not error for the ALJ to give greater weight to the opinion of Ms. McQueen's treating physician. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships."). In addition, "[w]here there is conflicting medical evidence, the [Commissioner] must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-957 (9th Cir. 2002) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). The ALJ found that Dr. Naiman's treatment records showed gradual improvement in Ms. McQueen's impairments and, as such, little weight was given to Dr. Marchant's sit, stand, and walk limitations. This was not unreasonable. This was also consistent with treatment notes in February 2011 documenting that Ms. McQueen was "very happy and pleased" when she engaged in more physical activity. Tr. 1048 citing Tr. 449.

Ms. McQueen also contends the ALJ erred when she ignored Dr. Marchant's opinion about weight limits. Dkt. 12 at 10. However, the ALJ incorporated by reference those portions of her prior decision that were not disturbed by the District Court. Tr. 1047 referencing Tr.

1088-1101. Specifically, the ALJ noted that in March 2013, Hayden Hamilton, M.D., observed that Ms. McQueen's gait was unremarkable and she had good heel strike and push off in both feet. Tr. 917. Dr. Hamilton found generally normal ranges of motion, as well as normal motor strength in the upper and lower extremities bilaterally. Tr. 918. Testing also showed that she could pick up small objects off a hard surface without difficulty and light touch was intact in all of her extremities, although pinprick was decreased in the right upper extremity. Tr. 918. Dr. Hamilton opined Ms. McQueen was unlimited in her ability to sit, stand and walk in an 8-hour workday, was capable of lifting or carrying 50 pounds occasionally and 25 pounds frequently, could climb ladders and scaffolding frequently, and had no manipulative limitations. Tr. 919. The ALJ gave some weight to Dr. Hamilton's opinion, but she found the entire record showed Ms. McQueen was limited to a light level of exertion instead of medium exertion. Tr. 1099. Dr. Hamilton's opinion of Ms. McQueen's lifting ability contradicted Dr. Marchant's opinion. However, it was not error for the ALJ to give more weight to Dr. Hamilton's opinion. Medical reports that are more recent "are highly probative." *Osenbrock v Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2000).

Also, in incorporating by reference her prior decision, the ALJ gave great weight to the opinion of the State Agency reviewing consultant, Dennis Koukol, M.D., who in June 2013, assessed Ms. McQueen capable of light level work with occasional overhead reaching bilaterally. Tr. 1098 citing Tr. 107-10. *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (A non-examining physician's opinion may amount to substantial evidence as long as other evidence in the record supports those findings.) The ALJ also discussed the August 2010 treatment record of Antoine D. Jones, M.D. Tr. 1048, 467-70. After his examination of Ms. McQueen, Dr. Jones concluded that she had normal strength in both arms with normal and

symmetrical reflexes; she had "no focal muscle atrophy" in her upper extremities; her pain was "most likely secondary to her bilateral shoulders" and was "likely bursitis;" and he recommended that she get into a work conditioning program because "disuse" of her shoulders was starting "a burgeoning adhesive capsulitis." Tr. 1048 citing Tr. 468-469 ("studies show that the longer a patient stays off from work, the less likely they will return successfully to work.").

Because the ALJ gave legitimate reasons to discount the opinion of Dr. Marchant, the Court affirms the ALJ's opinion.

**B.     The ALJ's Assessment of Ms. McQueen's Credibility**

During the November 28, 2016 remand hearing, Ms. McQueen testified that worsening back pain with accompanying reduced functionality is her most severe impairment. She testified that she experiences shooting pains from the left side of her hip bone and thigh down through the center of her left foot; that she also has lower back pain and needs to change positions, *i.e.*, stand up or sit down because of the pain; she frequently lays down throughout the day to ease back pain; she frequently drops dishes and cups and is unable to open jars; she showers less frequently as it is difficult to get in and out of the bathtub; and, she frequently has difficulty reaching overhead with both upper extremities although she had left shoulder surgery in 2008 and declined to have corrective surgery on her right shoulder. Mr. McQueen testified that her right shoulder goes numb when she lays down on it and constantly uses a tong or claw-object to grab onto things. Ms. McQueen testified that she is depressed because of constant, severe pain and reduced functionality and she is forgetful due to the combination of pain and depression, and needs to make lists for the store. Tr. 1046.

The ALJ found Ms. McQueen's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that her statements concerning the intensity,

persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 1046-47.

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). The Ninth Circuit has repeatedly and consistently held that where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on "clear and convincing reasons." *Carmickle,* 533 F.3d at 1160 (citations omitted); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); *see* Social Security Ruling 96–7p (explaining how to assess a claimant's credibility), *superseded*, Social Security Ruling 16–3p (eff. March 28, 2016).[3]

At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). In evaluating the claimant's testimony, the ALJ may use "'ordinary techniques of credibility evaluation.'" *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, *id.*;

---

[3] Social Security Rulings ("SSRs") are binding on the Administration. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). The appropriate analysis in the present case would be substantially the same under either SSR 96–7p or SSR 16–3p. *See R.P. v. Colvin*, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (observing that only the Seventh Circuit has issued a published decision applying Ruling 16–3p retroactively; also stating that Ruling 16–3p "implemented a change in diction rather than substance") (citations omitted); *see also Trevizo v. Berryhill*, 2017 WL 4053751, at *9 n.5 (9th Cir. Sept. 14, 2017) (SSR 16–3p "makes clear what our precedent already required.")

"'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). While a claimant need not "'vegetate in a dark room'" to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981)), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting, *see Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999); *Fair*, 885 F.2d at 603. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225; *Valentine v. Commissioner of Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

As discussed below, the ALJ stated sufficient reasons for deeming Ms. McQueen's subjective complaints less than fully credible.

The ALJ noted that records submitted after the decision issued in April 2014 (which was six months after Ms. McQueen's DLI), showed improvement. Tr. 1047 citing Tr. 1254 ("She is ambulating normally. She has some tenderness in the low lumbar area and decreased range of motion of the lumbar area due to pain. Normal strength and sensation in the lower extremities."). In September 2016, it was noted that she was not in acute distress although she complained of sciatic pain. Tr. 1272. "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988).

The ALJ also incorporated by reference her previous analysis of Ms. McQueen's physical and mental impairments, which included a discussion of credibility. Tr. 1047, 1049 (citing Tr. 1093-94, 1097-98). At that time, the ALJ found McQueen's allegations were not consistent with the objective medical evidence. Tr. 1097-98. 20 C.F.R. § 404.1529(c)((2) (objective medical evidence is a useful indicator in making reasonable conclusions about the intensity and persistence of symptoms). For example in August 2010, Ms. McQueen had normal strength in both upper extremities, normal and symmetrical reflexes and intact sensation in her upper extremities; her rotator cuff muscles were intact; and she had no focal muscle atrophy in her upper extremities. Tr. 835. Dr. Jones recommended a work conditioning program and, in commenting on the fact that she had been out of work for at least a year, noted that studies showed "the longer a patient stays off from work, the less likely they will return successfully to work." Tr. 836, 1048. Dr. Hamilton found Ms. McQueen had normal gait, normal ranges of motion (other than motion in her shoulders due to bursitis), and normal motor strength in her upper and lower extremities. Tr. 1097, 918-19. Ms. McQueen felt good about increasing her physical activity level. Tr. 1097, 449. Dr. Naiman encouraged Ms. McQueen to become more rather than less active, and to improve her diet and exercise and lose weight. Tr. 1049, 799, 441. In August 2011, Dr. Naiman stated Ms. McQueen "really wants a disability rating at this point." Tr. 1049, 789. The ALJ concluded that when compared to the objective findings, this suggested that Ms. McQueen had a degree of disability conviction despite evidence to the contrary. Tr. 1049. In addition, although Ms. McQueen complained of depression, she did not want to take antidepressant medication. Tr. 1049, 785.

Dr. Naiman advised Ms. McQueen that compliance with treatment included not only taking medication, but also better managing her diet, exercising and losing weight. Dr. Naiman

noted that Ms. McQueen functioned well enough to perform daily activities and household chores when she was compliant with treatment. Tr. 1049, 782. There was also some evidence showing that Ms. McQueen was more active than she let on. *See* Tr. 932 (in May 2013 she sought treatment due to a fall that occurred while she was outside doing yardwork "picking up rocks" two days earlier).

The Court finds that these were legally sufficient reasons on which the ALJ could properly rely to support an adverse credibility determination because an ALJ may base an adverse credibility determination on evidence of improvement or fair response from treatment. The Court therefore defers to the ALJ's credibility determination. *See Lasich v. Astrue*, 252 Fed.Appx. 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); *accord Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995).

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this case with prejudice.

DATED this 27th day of February, 2018.

BRIAN A. TSUCHIDA
United States Magistrate Judge